## WORMWELL v. P. DOUGHERTY CO.

(District Court, S. D. New York. November 3, 1909.)

Towage (§ 11\*)—Loss of Tow—Negligence—Evidence.

Stranding of schooner in tow near the Middle Ground Gas Buoy in the lower Chesapeake Bay *held* to have been caused by improper navigation on the part of the tug and not by the steering of the schooner after the parting of the hawser.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. § 11.\*]

(Syllabus by the Judge.)

In Admiralty. Action by Willis B. Wormwell against the P. Dougherty Company for the stranding of the schooner Alice M. Lawrence. Decree for libellant.

Wing, Putnam & Burlingham, for libellant.
James J. Macklin, for respondent.

ADAMS, District Judge. The six-masted schooner Alice M. Lawrence, loaded with coal, was taken in tow by the P. Dougherty Company's tug Dauntless at Baltimore, Maryland, on the 31st of July, 1908, bound for Portland, Maine. On the following day, the schooner was stranded on the Middle Ground, a short distance east by north from the Middle Ground Gas Buoy in the lower Chesapeake Bay. The libellant contends that the stranding was not due to any negligence on his part, but was wholly due to the fault of the respondent in that the Dauntless did not at the time have any proper lookout or competent navigating officer on deck, that she did not take proper soundings, or observe the bearings of the buoys and in that she failed to keep the schooner on her proper course, notwithstanding the favorable conditions of wind and weather.

The respondent after denying that there was any negligence on its part, alleged:

"Ninth: And for further answer to said libel, respondent alleges: That at or about the times mentioned in said libel the said respondent agreed to tow the schooner Alice M. Lawrence from Baltimore to Cape Henry, the said schooner to furnish a proper hawser for the performance of said towage service, and that the crew of said schooner was to look after the proper steering of the same, and pursuant to such contract the said schooner did provide a hawser of about 125 fathoms in length.

---

\*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Tenth: Upon information and belief, respondent also alleges, that the Steamtug Dauntless took the said schooner in tow and that said hawser was made fast to the forward part of said schooner by those on board thereof and the other end of said hawser on the stern of the said steamtug, and that at or about 10 o'clock of the day mentioned in said libel, the said steamtug started with the said schooner from Baltimore to Cape Henry, the weather being pleasant and favorable, and that at or about midnight of the first day of August, 1908, bad weather set in, making a rough sea the wind blowing very strong, and whilst said steamtug was proceeding very carefully with said schooner the hawser so provided by said schooner parted at or about 5 o'clock a. m.; whereupon the said steamtug attempted to pick up the said schooner, and while so manœuvering, found that the said schooner's wheel had been put the wrong way by those on board thereof; whereupon those on board the said schooner were hailed to hard a port their wheel, but before the same was done the said schooner brought up on the Middle Ground mentioned in said libel, a short distance from the Middle Ground Gas Buoy, resulting in damage being done the said vessel, the wind at the time being from the North Northeast.

Respondent also alleges that had proper care and attention been exercised by those on board and navigating said schooner with the sails she had·set, and had her wheel been properly attended, the said schooner would not have touched bottom, nor would the stranding mentioned in said libel have occurred.

Respondent also alleges upon like information and belief that the said Steamtug Dauntless did everything possible to haul the said vessel off bottom in order to save her from pounding on the same, and proceeded to Norfolk and secured the services of the Steamtug Margaret and returning to said schooner found her afloat; whereupon both said steamtugs Dauntless and Margaret towed the said schooner into Hampton Roads where a survey was held and a steam pump placed on said schooner.

Eleventh: Respondent upon information and belief also avers that the parting of. the said hawser and the damage resulting to the said schooner was either from the imperfect condition of said hawser provided by said schooner, the bad weather that set in on said voyage or the carelessness of those in charge and controlling said schooner in putting her wheel the wrong way, thus causing her to touch bottom as aforesaid."

It appears that the four-masted schooner William H. Yerkes, Jr., was being towed to sea at the same time by the tug Tormentor, and that the vessels were kept in company until the accident happened.

The libellant's testimony shows that about 5 o'clock a. m., the Lawrence fetched up to the north eastward of the Middle Ground Gas Buoy. She came off leaking and anchored. Afterwards she was taken to Hampton Roads and subsequently proceeded to Portland, with a wrecking pump. Her damages were found to be serious and were estimated at $10,000.

It appears that the Yerkes was a smaller vessel, drawing 23 feet 8 inches, and probably was of less draught than the Lawrence. The cargo capacity of the Yerkes was 2,400 tons, while the Lawrence carried 5,000 or 5,200. tons.

When the vessels were approaching the Middle Ground, the Yerkes was about a quarter of a mile ahead of the Lawrence and about a point on her port bow. Her tug was more powerful than the Dauntless, but the Yerkes was not carrying sail, while the Lawrence had considerable set, which accounts for the latter keeping up with the former.

It was the custom of navigators in the vicinity of the Middle Ground to arrange their speed so as not to reach the place before daylight, ac-

cordingly the Dauntless slowed her engines so as to wait, having been under one bell since 3 a. m.

When near the Middle Ground the tide cuts strongly to the eastward upon the shoals. On this morning, when the vessels approached, it was near the last of the ebb and of a strength of about 2 miles an hour. The north wind which was blowing down the bay, had tended naturally to drive the water out of the lower part of the bay thus increasing the danger from the shoals.

Both tugs were in the hands of their mates, the respective masters having left their pilot houses to go to their sleeping quarters, to come out when specially called. The courses of the vessels, which seemed to be parallel to each other, were S. ½ W. The variation here is 4° 40" to the westward, hence the course of S. ½ W. would be about S. true.

There was ample navigable water to the westward of the Gas Buoy, and to be safe against the side set of the current the buoy should have been left well on the port hand, on a course of something like S. S. W. The courses of S. ½ W. were therefore dangerous, as they proved in this case by the Lawrence shortly striking bottom heavily aft. After this thump she struck again and then brought up. The Yerkes did not strike the bottom but parted her hawser probably because of the strain caused by the waves incident to a heavy sea. The Dauntless at the time of striking was either directly ahead or slightly on the port bow of the schooner. After the striking the Dauntless sheered off to starboard but could not pull the Lawrence off the ground. Subsequently, however, assistance was obtained and she was released and later went on her way.

The preponderance of the testimony shows that the cause of this stranding was the negligent navigation of the tug, as the Lawrence was following her closely at the time of stranding. The Dauntless contends that the accident was due to the bad navigation of the schooner after the parting of the hawser, which broke just before the Lawrence struck. It was a good hawser and nothing against the schooner can be attributed to it. The hawser was brought into court, and the parted place looked as if a clean cut had been made near where it was fastened to the tug, but assuming it was a break, it does not relieve the tug of liability, which is established not only by the proved occurrences but by admissions of the master shortly after the accident. It was also shown by the testimony of the master of the schooner Perry, which had sailed down the bay and anchored about a mile to the westward of the Gas Buoy. He said that the Lawrence was certainly a mile and a half out of her course to the eastward.

The contention of the respondent that after the breaking of the hawser, the schooner sailed aground on the shoals from a safe place in the channel must be rejected.

There will be a decree for the libellant, with an order of reference.